114 Cal.Rptr.2d 375 (2001)
94 Cal.App.4th 530
IGNACIO R., Petitioner,
v.
The SUPERIOR COURT of San Diego County, Respondent;
The People, Real Party in Interest.
No. D038164.
Court of Appeal, Fourth District, Division One.
December 12, 2001.
Review Denied March 13, 2002.[*]
Steven J. Carroll, Public Defender, and Jo Pastore, Deputy Public Defender, for Petitioner.
No appearance for Respondent.
Paul J. Pfingst, District Attorney, Thomas F. McArdle and Peter J. Cross, Deputy District Attorneys, for Real Party in Interest.
*376 McDONALD, J.
Petitioner Ignacio R. was adjudicated a ward of the juvenile court under Welfare and Institutions Code section 602[1] and placed on probation. While on probation, petitioner engaged in a fight that violated his probation and allegedly violated Penal Code section 245, subdivision (a)(1). The San Diego County Probation Department filed a motion alleging petitioner violated probation and seeking modification of the previous dispositional order. At the hearing on this motion, petitioner admitted to violating probation by engaging in two fights; the court then set a dispositional hearing.
Before the dispositional hearing, the prosecuting attorney filed a new section 602 petition alleging petitioner's fight violated Penal Code section 245, subdivision (a)(1). Petitioner moved to dismiss the section 602 petition, arguing that double jeopardy principles barred the prosecuting attorney from pursuing the new section 602 petition because the probation department's motion to modify the previous probation dispositional order was based on the same criminal conduct and placed him in jeopardy for that conduct. The court denied petitioner's motion to dismiss.
In the current writ proceeding, petitioner seeks an order requiring the court to dismiss the new section 602 petition. We conclude that, whatever distinctions may exist between adult and juvenile probation revocation proceedings, the reasons double jeopardy protections are inapplicable to adult probation revocation proceedings pertain also to juvenile probation revocation proceedings. Accordingly, we deny the petition.

I

BACKGROUND
In October 2000 petitioner was adjudicated a ward of the juvenile court under section 602 based on a violation of Penal Code section 242 (first offense). He was placed on probation but remained in the physical custody of his mother. In December 2000 he was continued as a ward but removed from his mother's custody; petitioner's probationary status was continued and he was placed in the Breaking Cycles program at a juvenile ranch facility. Petitioner engaged in two fights while at that facility, including a fight on February 1, 2001, in violation of the terms and conditions of his probation. The February 1, 2001, fight also allegedly violated Penal Code section 245, subdivision (a)(1).
The probation department filed a motion alleging petitioner had violated the terms of his probation and recommending his placement be changed from the juvenile ranch facility to juvenile hall. At that "detention/violation of probation" hearing, petitioner admitted to fighting in violation of his probation; the court then scheduled a dispositional hearing. However, before the dispositional hearing was held, the prosecuting attorney filed a new section 602 petition alleging petitioner's February 1, 2001, fight violated Penal Code section 245, subdivision (a)(1); the dispositional hearing on his probation violation was continued.
Petitioner moved to dismiss the section 602 petition. He argued that because the crime alleged in the section 602 petition was based on the same fight that was alleged as a probation violation in the probation revocation proceeding, and jeopardy had attached in the probation revocation *377 proceeding, double jeopardy principles barred a new section 602 petition based on that fight. The court denied the motion to dismiss the new section 602 petition.[2]

II

ANALYSIS
A. Revocation of Adult Probation
The double jeopardy clause of the United States Constitution (U.S. Const., 5th Amend.) provides three types of protections to defendants: it bars a later prosecution for the same offense after an acquittal, it bars multiple convictions for the same offense, and it bars multiple punishments for the same offense. (Illinois v. Vitale (1980) 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228, abrogated on other grounds in United States v. Dixon (1993) 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556, as recognized in United States v. Brackett (5th Cir.1997) 113 F.3d 1396, 1400, fn. 6.) The double jeopardy ban against double punishment does not prohibit the state from using the same current criminal conduct to both revoke an adult's probation and prosecute the adult separately for the current offense. The courts have reasoned that punishment imposed because of the probation revocation is attributable to the prior conviction rather than to the current offense, and therefore the defendant may be separately punished for the new offense without violating double jeopardy principles. (Johnson v. United States (2000) 529 U.S. 694, 698-699, 120 S.Ct. 1795, 146 L.Ed.2d 727; In re Coughlin (1976) 16 Cal.3d 52, 61, 127 Cal.Rptr. 337, 545 P.2d 249.)
Here, petitioner's first offense resulted in a dispositional order that included probation. He then allegedly engaged in new criminal conduct that exposed him to a new section 602 petition and also violated the terms of his probation. Unless the nature of a section 602 wardship requires an analysis different from an analysis of proceedings in adult court, the state may revoke petitioner's probation and pursue a new section 602 proceeding without violating double jeopardy principles.

B. Revocation of Juvenile Probation

Double jeopardy principles can apply in juvenile wardship proceedings. (See, e.g., Richard M. v. Superior Court (1971) 4 Cal.3d 370, 375-376, 93 Cal.Rptr. 752, 482 P.2d 664.) Petitioner argues the ban against multiple punishments for the same offense is violated here.[3] However, unless a juvenile whose probation is revoked can suffer as a result of the probation revocation added punishment not attributable to the offense for which probation was granted, double jeopardy principles will not bar the state from pursuing a new section 602 petition and also seeking to revoke the juvenile's probation.
Petitioner relies on In re Arthur N. (1976) 16 Cal.3d 226,127 Cal.Rptr. 641, 545 P.2d 1345 to argue that when a section 602 ward's probation is revoked because of a new criminal offense, the ward can be subjected as a result of the probation revocation to additional punishment attributable to his new conduct rather than to the original offense. This distinction from *378 adult proceedings, argues petitioner, makes cases like Johnson v. United States inapplicable to whether double jeopardy principles apply to a juvenile probation revocation proceeding. However, the Arthur N. court did not address double jeopardy questions. The issue in Arthur N. was whether a juvenile probation revocation proceeding required proof of the probation violation beyond a reasonable doubt even though an adult probation revocation proceeding utilized a preponderance of the evidence standard. The court held that, based on the nature of a probation revocation proceeding under section 777 and the potential consequences of probation revocation for the juvenile, the probation violation was required to be proved beyond a reasonable doubt. (In re Arthur N. at pp. 238-240, 127 Cal.Rptr. 641, 545 P.2d 1345.)[4]
Petitioner relies on Arthur N.'s discussion to argue the juvenile court double jeopardy analysis must likewise be different from that applicable to adult court. The Arthur N. court compared the adult and juvenile systems and stated that "the most serious consequence that may befall [an adult] probationer if his probation is revoked is the imposition or execution of the judgment imposing the statutory term of imprisonment for the offense of which he was originally convicted, and in determining the maximum amount of time he shall serve within the statutory range, the Adult Authority may not consider his conduct subsequent to that offense." The Arthur N. court then contrasted the adult court system with the juvenile court system, which contemplates that a section 602 ward can be subject to a progressively restrictive series of dispositional orders based on his conduct during the probationary period. The court stated at page 237, 127 Cal.Rptr. 641, 545 P.2d 1345 that:
"[W]hile the adult whose probation is revoked may not be subjected to any greater punishment than that provided for the original offense ... a 602 ward ... may be removed from the parents' home and subjected to increasingly severe and restrictive custody [that] exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct."
Petitioner argues that because a juvenile whose probation is revoked is exposed to increasingly severe and restrictive custody beyond that which would have been permissible based on the original offense, he (unlike an adult probationer) is exposed to additional punishment based on his additional acts of misconduct. Accordingly, petitioner argues, a juvenile probation revocation proceeding is unlike an adult probation revocation proceeding and the former places him in jeopardy for his new misconduct. The juvenile probation revocation proceeding therefore precludes a new section 602 proceeding seeking to punish him for the same misconduct.
We are not persuaded by petitioner's double jeopardy argument based on Arthur N. because it erroneously equates a new dispositional order that subjects a ward to increased custodial restrictions with an order imposing added punishment beyond that attributable to the original offense. The preferred disposition of a minor adjudged a section 602 ward based on a criminal offense is probation rather than removal from a parent's physical custody. (In re Kazuo G. (1994) 22 Cal. App.4th 1, 8, 27 Cal.Rptr.2d 155.) If the minor violates probation, the court may order that physical custody be removed *379 from the parent and that the ward be placed in a new and more restrictive environment. However, the ward's maximum term of physical confinement remains based on the underlying offense. (Ibid.; § 726, subd. (c).) Thus, although there may be a change in placement that reduces the freedom previously enjoyed by the juvenile, the punishment, which is the maximum term of physical confinement, remains the same and is calculated based on the underlying offense that resulted in the sustained original section 602 petition. (In re Ernest R. (1998) 65 Cal.App.4th 443, 446-450, 76 Cal.Rptr.2d 453.)
Revoking probation may change the level of restriction on a juvenile's liberty but it does not result in additional punishment within the meaning of double jeopardy. Instead, the juvenile remains a ward subject to the same maximum term of physical confinement, and the probation revocation results only in a change in his physical placement. In an analogous context, the courts have concluded that an adult prisoner who commits new criminal conduct while incarcerated may be subjected to prison disciplinary actions that increase the restrictions on his liberty as well as to a new prosecution for the penal violation, without violating double jeopardy principles. (People v. Hayes (1971) 16 Cal. App.3d 662, 668, 94 Cal.Rptr. 222; In re Gullatt (1968) 69 Cal.2d 395, 398, 71 Cal. Rptr. 676, 445 P.2d 292; People v. Eggleston (1967) 255 Cal.App.2d 337, 339, 63 Cal.Rptr. 104; People v. Ford (1959) 175 Cal.App.2d 37, 39, 345 P.2d 354.) The Eggleston court, recognizing that sanctions imposed as a result of a prison disciplinary hearing do not extend the term a prisoner is already serving but merely make the existing term more onerous, stated at pages 339 to 340, 63 Cal.Rptr. 104 that:
"The confinement of this defendant in an isolation unit deprived him of his separate quarters, association with others, and access to the yard and recreation areas. But these were privileges voluntarily granted to him during good behavior. They were not rights inherent in his status as a prisoner. Imposition of this sanction in no way extended the term defendant was already serving. It brought upon him no new term of imprisonment. It merely made his existing term more onerous (People v. Ford, supra, 175 Cal.App.2d 37, 345 P.2d 354).... We conclude that this disciplinary measure imposed by an administrative body did not place defendant in jeopardy, so as to bar his prosecution in a judicial proceeding for violation of a penal statute."
Similarly, a change in a juvenile dispositional order based on new misconduct, although altering and making more onerous the restrictions placed on petitioner while a ward, does not extend the term of the wardship or increase the maximum term of confinement based on the new misconduct. We are convinced, therefore, that double jeopardy does not bar a new section 602 proceeding based on the new criminal offense for which a more restrictive dispositional order is also sought.
The authorities cited by petitioner are not inconsistent with our conclusion. Arthur N. merely recognized that a juvenile can forfeit a more lenient placement if he engages in conduct showing that a lenient placement is an inappropriate setting for his rehabilitation. Although Arthur N. held the possibility of a more restrictive placement resulting from a juvenile probation revocation required proof beyond a reasonable doubt, it did not suggest that a more restrictive placement also includes an increase in either the length of the wardship or the maximum term of physical confinement beyond that permitted by the original offense. Petitioner also relies on *380 In re Marco A. (1996) 50 Cal.App.4th 1516, 58 Cal.Rptr.2d 540 and In re Johnny R. (1995) 33 Cal.App.4th 1579, 40 Cal.Rptr.2d 43. Those cases stand only for the generic principle that double jeopardy protections can arise in a juvenile proceeding. In Marco A, a petition was filed charging the juvenile with criminal conduct under both section 602 and section 777; at the end of the trial court proceeding, the section 777 allegation was amended to allege the juvenile also violated probation because he was absent without leave from his placement (AWOL) in violation of probation. The Marco A court, after holding the evidence was insufficient to support the AWOL allegation, examined whether the state could file a new section 777 proceeding based on the same AWOL allegation. The court concluded that because the juvenile had been placed in jeopardy of losing his probationary status based on the AWOL allegation, double jeopardy principles precluded a subsequent section 777 proceeding based on that same allegation. (In re Marco A, supra, at pp. 1521-1523, 58 Cal.Rptr.2d 540.) The Marco A. court in effect held that the double jeopardy ban against "later prosecution for same offense after acquittal" (cf. People v. Hatch (2000) 22 Cal.4th 260, 272, 92 Cal.Rptr.2d 80, 991 P.2d 165 [appellate reversal for insufficiency of evidence is tantamount to acquittal and bars retrial]) will bar serial efforts to revoke probation based on the same underlying misconduct.[5]Marco A. did not address whether the ban against multiple punishments for the same offense is triggered by a prior probation revocation proceeding. In Johnny R., the sole double jeopardy question was whether the state could amend its section 602 petition in mid-trial to allege a new, but related, offense. Although this court concluded the trial court erred by permitting the amendment, we specifically rejected the claim that double jeopardy principles were violated by the amendment. (Johnny R., supra, at pp. 1581-1582, 40 Cal.Rptr.2d 43.) Although Johnny R. and Marco A. support the argument that double jeopardy principles can apply in juvenile proceedings, they do not support petitioner's argument that the double jeopardy analysis applicable to adult probation revocation proceedings is inapplicable to juvenile probation revocation proceedings.

DISPOSITION
The petition for writ of prohibition is denied.
WE CONCUR: HUFFMAN, Acting P.J., and NARES, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] The court opined that the prosecuting attorney was required by the current version of section 777 to dismiss the probation violation proceeding to proceed with the new section 602 proceeding. The prosecuting attorney then moved to dismiss the probation violation proceeding.
[3] Petitioner does not contend that pursuing the new section 602 petition violates the ban against either a later prosecution for the same offense after an acquittal or multiple convictions for the same offense.
[4] Section 777, subdivision (c) now provides that the facts supporting the probation revocation order in juvenile court be proved by a preponderance of the evidence.
[5] The current version of section 777, subdivision (a)(3), effective March 8, 2000, appears to support this conclusion. A motion to revoke a section 602 ward's probation under section 777 is now limited to violations of probation "not amounting to a crime." (§ 777, subd. (a)(2).) If the probation department institutes such a proceeding, subdivision (a)(3) permits the prosecuting attorney to seek dismissal of the proceeding "prior to the attachment of jeopardy." This reference to jeopardy can only refer to the potential for forfeiting the ward's current dispositional status, because only noncriminal conduct triggers section 777 proceedings, and thus conduct subject to a section 777, subdivision (a)(2) petition would never be an offense to which traditional double jeopardy protections would attach. We therefore construe subdivision (a)(3) as using the term "jeopardy" to permit dismissal of a probation revocation proceeding as long as it has not reached the stage at which the ward's dispositional status was adjudicated, invoking the double jeopardy ban against later use of the same conduct to revoke probation after a finding of no probation violation.